ERIC C. SOHLGREN, Bar No. 161710
ecs@paynefears.com
LINDLEY P. FRALEY, Bar No. 223421
lpf@paynefears.com
PAYNE & FEARS LLP
Attorneys at Law
4 Park Plaza, Suite 1100
Irvine, CA 92614
Telephone: (949) 851-1100
Facsimile: (949) 851-1212

ERIC A. WELTER, VA Bar No. 38193
eaw@welterlaw.com
WELTER LAW FIRM PC
720 Lynn Street, Suite B
Herndon, VA 20170
Telephone: (703) 435-8500
Facsimile: (703) 435-8851

Attorneys for Defendant
7-ELEVEN, INC.

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY ALEKSICK, individually and on behalf of other members of the general public similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>7-ELEVEN, INC., a Texas Corporation, MICHAEL TUCKER; an individual; and DOES 1-50, Inclusive,<br><br>        Defendants. | CASE NO. 08 CV 0059 J  (WMc)<br>The Hon. Napoleon A. Jones, Jr.<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANT 7-ELEVEN, INC. IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND TO STATE COURT**<br><br>Hearing Date:  March 3, 2008<br>Time:        8:30 a.m.<br>Courtroom: 12<br>Judge:     Hon. Napoleon A. Jones, Jr. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

I.    INTRODUCTION ...................................................................... 1

II.   STATEMENT OF FACTS ............................................................ 3

      A.    Procedural History ........................................................... 3

      B.    The Parties ..................................................................... 4

      C.    The Independent Contractor Relationship Between
            7-Eleven and Tucker ........................................................ 5

III.  LEGAL ARGUMENT .................................................................. 7

      A.    The Applicable Legal Standard ........................................... 7

      B.    7-Eleven Has Established the Substantive Elements
            for Removal Jurisdiction ................................................... 9

      C.    7-Eleven's Removal of the First Amended Complaint
            Was Timely ................................................................... 10

            1.    7-Eleven Removed Within Thirty Days of Service
                  of the First Amended Complaint ............................... 10

            2.    The First Amended Complaint Is a "New Lawsuit" ...... 11

                  a.    The First Amended Complaint Is a
                        Substantially New Suit .................................. 11

                  b.    Policy Considerations Favor Removal ............... 16

      D.    Plaintiff Is Not Entitled To Attorneys' Fees and Costs ........... 17

IV.   CONCLUSION ....................................................................... 18

MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO
REMAND TO STATE COURT                                      08 CV 0059 J (WMc)

# TABLE OF AUTHORITIES

## Cases

Baron v. Brown, 83 F.Supp. 520 (D.N.Y. 1949)......................................................8

Bator v. Hungarian Commericial Bank, 90 F.Supp. 609 (D.N.Y. 1950) .................8

Braud v. Transport Serv. Co. of Ill., 445 F.3d 801 (5th Cir. 2006) .................... 7, 11

Chelkova v. Southland Corp., 771 N.E.2d 1100 (Ill. App. 2002) ...........................14

Cislaw v. Southland Corp., 4 Cal.App.4th 1284 (1992)...........................................14

Cliett v. Scott, 233 F.2d 269 (5th Cir. 1956) ..................................................... 7, 11

Craig Food Indus., Inc. v. Taco Time Intl., Inc., 469 F.Supp. 516 (D.Utah 1979) ...8

Daves v. Southland Corp., 2000 WL 60199 (Wash. App. 2000) ............................14

Davis v. Time Ins. Co., 698 F.Supp. 1317 (S.D.Miss. 1988)............................. 8, 11

Fletcher v. Hamlet, 116 U.S. 408 (1886)........................................................... 7, 11

Garden Homes v. Mason, 143 F.Supp. 144 (D.Mass. 1956)............................. 8, 16

Gerety v. Inland Newspaper Representatives, 152 F.Supp. 31 (D.N.Y. 1957).........8

Hatcher v. Augustus, 956 F.Supp. 387 (E.D.N.Y. 1997) ........................................15

Howell v. Chick-Fil-A, Inc., 1993 WL 603296 (N.D.Fla. 1993) ...........................15

In re Wal-Mart Stores, Inc. Wage and Hour Litigation, 505 F.Supp.2d 609
    (N.D.Cal. 2007) ................................................................................................13

Johnson v. Heublein, Inc., 227 F.3d 236 (5th Cir. 2000) ................................ passim

Maddock v. KB Homes, Inc., 2007 WL 2221030 (C.D.Cal. 2007) .......................12

Martin v. Franklin Capital Corp., 546 U.S. 132 (2005)..........................................17

Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344 (1999) .............10

Singh v. 7-Eleven, Inc., 2007 WL 715488 (N.D.Cal. 2007) ............................ 12, 14

Wickham v. Southland Corp., 168 Cal.App.3d 49 (1985) ......................................14

Wilson v. Intercollegiate (Big Ten) Conference Athletic Assoc., 668 F.2d 962
    (7th Cir. 1982) .......................................................................................... passim

**Statutes**

28 U.S.C. § 1332(d)(2) ...........................................................................................9

28 U.S.C. § 1332(d)(5) ...........................................................................................9

28 U.S.C. §§ 1332(d) & 1453 ................................................................................9

28 U.S.C. §§ 1441 & 1446......................................................................................9

Cal Code Civ. Proc. § 128.7 .................................................................................14

Cal. Labor Code § 226.7(a).....................................................................................11

Cal. Labor Code § 226.7(b).....................................................................................11

Cal. Labor Code § 2802(a)......................................................................................11

Cal. Labor Code § 512(a)........................................................................................11

Cal. Labor Code §§ 226 ..........................................................................................11

Cal. Bus. & Prof. Code § 17200 ...........................................................................11

**Rules**

Fed. R. Civ. Pro. 11................................................................................................14

**Treatises**

14C Wright, Miller & Cooper, Federal Practice & Procedure
   § 3732 (3d Ed. 1998) ................................................................................. 8, 16

MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO
REMAND TO STATE COURT                              08 CV 0059 J  (WMc)

Defendant 7-Eleven, Inc. ("7-Eleven") hereby opposes Plaintiff's motion to remand this case to state court. Plaintiff concedes that the allegations in the First Amended Complaint satisfy the jurisdictional requirements for removal. The sole basis for Plaintiff's motion to remand is her contention that 7-Eleven's removal was untimely because it should have removed the case based on the original Complaint. Because the First Amended Complaint so changed the nature of this action as to constitute a new lawsuit, 7-Eleven's filing of a notice of removal within thirty days of receipt of the First Amended Complaint was timely. Accordingly, the Court should retain jurisdiction of this matter and deny Plaintiff's motion to remand.

## I.    INTRODUCTION

7-Eleven removed this case to federal court because Plaintiff's First Amended Complaint so changed the nature of this action as to constitute a new lawsuit against 7-Eleven. The well-settled "revival exception" restores the defendant's right to remove a case when the complaint is amended in such a manner as to alter the character of the action and constitute essentially a new lawsuit. Because Plaintiff concedes that the First Amended Complaint otherwise satisfies the jurisdictional requirements for removal and because there is no dispute that 7-Eleven removed the case in a timely manner upon receipt of the First Amended Complaint, the only issue before this Court is whether the First Amended Complaint substantially altered the character of this action to constitute essentially a new lawsuit. 7-Eleven respectfully submits that it does and that this Court should retain jurisdiction over this action.

On or about April 16, 2007, Plaintiff filed a Complaint against Defendant 7-Eleven, Inc. ("7-Eleven") and its franchisee Defendant Michael Tucker ("Tucker") in the Superior Court for the State of California, County of Imperial. The original Complaint contained several causes of action based on alleged violations of the California Labor Code. The first cause of action alleged

1

violations of the Labor Code for failure to provide meal or rest breaks, failure to pay overtime compensation, requiring employees to pay for uniforms, and noncompliant wage stubs.  The second cause of action alleged a claim under Business and Professions Code § 17200 for the same alleged violations.

7-Eleven was named a defendant on both causes of action in the original Complaint based on the allegation that it was Plaintiff's employer – i.e. a joint employer with its franchisee Tucker.  A finding that 7-Eleven was a joint employer with Tucker, however, would only extend to the employees of his two stores[1] and thus could not have triggered any class-wide liability or more than nominal damages.  Recognizing this defect in the original Complaint, Plaintiff has brought a "new lawsuit" against 7-Eleven.

On December 13, 2007, 7-Eleven received Plaintiff's First Amended Complaint by facsimile.  The First Amended Complaint is substantially different from the original Complaint and constitutes a new lawsuit against 7-Eleven.  The First Amended Complaint includes new claims against 7-Eleven that are fundamentally different from those in the original Complaint.  The new claims include negligence, negligence per se, and negligence interference with prospective economic advantage, and a claim for penalties under the California Private Attorneys General Act, Labor Code § 2699.  It is Plaintiff's three new negligence claims (that are only pled against 7-Eleven) that completely change the nature of the case with respect to 7-Eleven.[2]

---

[1]    The determination of whether 7-Eleven was a joint employer with Tucker would depend on a factual inquiry into the actual operations of Tucker's stores.  Such a finding would <u>not</u> extrapolate to the stores throughout California operated by *different* franchisees at the other 1,200 stores throughout the state.  <u>Compare Maddock v. KB Homes, Inc.</u>, 2007 WL 2221030, at *14 (C.D.Cal. 2007).

[2]    Despite a lengthy recitation of the documents in the case, one searches Plaintiff's motion to remand in vain for any reference to the three new negligence claims.  Plaintiff's omission is conspicuous given the significance of these claims.

2

Plaintiff's new negligence claims seek for the first time to impose *direct* liability on 7-Eleven. Unlike the original Complaint, the new negligence claims do not depend on a finding that Plaintiff, as an employee of Tucker, was also employed by 7-Eleven. The new negligence claims allege direct liability on the part of 7-Eleven in providing payroll services to all 1,200 7-Eleven stores in California. The new claims are also based on a new factual allegation, namely, that 7-Eleven employed an improper rounding method in paying franchise employees. In addition, the new claims are not pled against the franchisee, Tucker, but only against 7-Eleven. The First Amended Complaint also seeks punitive damages against 7-Eleven based on these new claims in tort, which were not available under the original Labor Code allegations. Thus, the new negligence claims significantly change the nature and potential scope of this lawsuit against 7-Eleven. It is a completely different case.

7-Eleven removed the case to this court on January 10, 2008, within thirty days of receipt of the First Amended Complaint. The First Amended Complaint was the first time that 7-Eleven was placed on notice of the nature of these substantially different claims. If the Court finds that the First Amended Complaint constitutes essentially a new lawsuit against 7-Eleven, then it must retain jurisdiction over this case because Plaintiff has otherwise conceded that the First Amended Complaint satisfies the jurisdictional requirements for removal.

## II.     STATEMENT OF FACTS

### A.     Procedural History.

Plaintiff filed her original Complaint on or about April 16, 2007. (*Declaration of Alison M. Miceli* ¶ 3 & Ex. A [hereafter *Miceli Decl.*]). The first cause of action alleged violations of the California Labor Code by Tucker for failure to provide meal or rest breaks, failure to pay overtime compensation, requiring employees to pay for uniforms, and noncompliant wage stubs. (*Id.* Ex. A ¶¶ 21-34). The second cause of action alleged a claim under Business and

Professions Code § 17200 for the same alleged violations.  (*Id.* Ex. A ¶¶ 36-48).
7-Eleven was named a defendant on both causes of action based on the allegation
that it was Plaintiff's employer.  (*See Plaintiff's Points and Authorities in Support
of Motion to Remand* at 3 ("alleged that 7-ELEVEN was the employer") [hereafter
*Pl. Memo.*]; *see also Miceli Decl.* Ex. A ¶ 18).

On December 13, 2007, 7-Eleven received Plaintiff's First Amended
Complaint by facsimile.  (*Declaration of Eric A. Welter* ¶ 2 & Ex. A [hereafter
*Welter Decl.*]).  The First Amended Complaint includes new claims against
7-Eleven for negligence, negligence per se, and negligence interference with
prospective economic advantage, and a new claim for penalties under the
California Private Attorneys General Act, Labor Code § 2699.  (*Miceli Decl.* Ex. K
¶¶ 23-44).  The new claims are asserted only against defendant 7-Eleven, Inc.  (*Id.*)
The First Amended Complaint was filed by the state court on December 18, 2007.
(*Miceli Decl.* Ex. K; *Pl. Memo.* at 4).  7-Eleven removed the case to this Court on
January 10, 2008.  (*Docket No. 1*).

### B.    The Parties.

7-Eleven, Inc. owns, operates, and franchises retail food stores under the
trademarked name "7-ELEVEN."  (*Welter Decl.* ¶ 4 & Ex. D at 2 (*Tucker's
Responses to Request for Admissions*) [hereafter "*Tucker Adm.*"]).  In 2006,
7-Eleven had approximately 1,200 franchise stores in California.  (*Declaration of
Larry Borders* ¶ 2 [hereafter *Borders Decl.*]).  In 2006, 19,346 individuals were on
the payroll of 7-Eleven's California franchisees.  (*Id.* ¶ 2).

During the relevant time period, Defendant Michael Tucker was the
franchise owner of Store Nos. 22818 and 23229 in Brawley, California.  (*Tucker
Adm.* at 2-3; *Welter Decl.* ¶ 3 & Ex. C (*7-Eleven's Request for Admission to
Tucker*) [hereafter "*7-Eleven Req. Adm.*"]).  Plaintiff worked at both stores during
her tenure with Tucker from 2005 through 2007.  (*Borders Decl.* ¶ 3; *First Amd.*

1  *Compl.* ¶ 19). In 2006, Tucker's two stores had a total of 53 individuals on the

2  payroll. (*Borders Decl.* ¶ 4).

3      **C.      The Independent Contractor Relationship Between 7-Eleven and**

4  **Tucker.**

5      Plaintiff acknowledges that a franchise agreement existed between 7-Eleven

6  and Tucker and has attached an excerpt of the agreement as Exhibit D to the First

7  Amended Complaint. (*First Amd. Compl.* ¶ 21 & Ex. D). Plaintiff further alleges

8  that as part of the franchise relationship, 7-Eleven agreed to provide payroll

9  services to Tucker. (*Id.* ¶ 20). 7-Eleven has lodged a copy of the agreement with

10  the Court. (*Memorandum in Support of Defendant's Motion for Judgment on the*

11  *Pleadings, Declaration of Eric A. Welter* ¶ 2 & Ex. A [hereafter *Franchise Agr.*];[3]

12  *see also Tucker Adm.* at 3).

13      Plaintiff alleges that, pursuant to the franchise agreement, 7-Eleven

14  configured and processed the payroll for Tucker. (*First Amd. Compl.* ¶ 20).

15  Paragraph 12 of the franchise agreement provides that the franchisee agrees to

16  "prepare and furnish to" 7-Eleven "time and wage authorizations for your Store

17  employees." (*Franchise Agr.* ¶ 12(c)(1)). The franchise agreement contains the

18  explicit acknowledgment of the franchisee that 7-Eleven is "relying on the

19  accuracy of all information you and your employees provide, including all payroll

20  information." (*Id.* ¶ 12(c)(3)). The franchise agreement further provides that "all

21  information that you [Tucker] and your employees provide will be truthful,

22  accurate, complete and in compliance with all applicable laws." (*Id.* Ex. D, ¶

23  12(c)(3)). The franchisee also agrees "at all times [to] use the 7-Eleven Payroll

24  System in accordance with our standards." (*Id.* ¶ 19(h)).

25

26

27

28  [3]     Docket No. 8, Exhibit 4.

MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO
REMAND TO STATE COURT                                              08 CV 0059 J (WMc)

The franchise agreement also establishes an independent contractor relationship between Tucker and 7-Eleven.  Paragraph 2 of the franchise agreement provides:

> **2.    Independent Contractor.**  You and we agree that this Agreement creates an arm's-length business relationship and does not create any fiduciary, special or other similar relationship.  You agree:  (a) to hold yourself out to the public as an independent contractor; (b) to control the manner and means of the operation of the Store; and (c) to exercise complete control over and responsibility for all labor relations and the conduct of your agents and employees, including the day-to-day operations of the Store and all Store employees.  You and your agents and employees may not:  (i) be considered or held out to be our agents or employees or (ii) negotiate or enter any agreement or incur any liability in our name, on our behalf, or purporting to bind us or any of our or your successors-in-interest.  Without in any way limiting the preceding statements, we do not exercise any discretion or control over your employment policies or employment decisions.  All employees of the Store are solely your employees and you will control the manner and means of the operation of the Store.  No actions you, your agents or employees take will be attributable to us or be considered to be actions obligating us.

(*Id.* ¶ 2).  Tucker further admits that he was not an employee of 7-Eleven.  (*Tucker Adm.* at 3-4).

Tucker was responsible for the overall operations of his store.  (*Tucker Adm.* at 6, 13).  Tucker was responsible for setting the prices of merchandise, ordering inventory, for hiring his employees, and for firing his employees.  (*Id.* at 6, 14).  Tucker was responsible for the labor and employment relations at his store; 7-Eleven was not.  (*Id.* at 12-13).  Tucker was responsible for controlling the manner and means in which his employees performed their duties at his store;

7-Eleven was not. (*Id.* at 13-14). No one at 7-Eleven told him who to hire or who to fire. (*Id.* at 6-7). Tucker was responsible for training the employees at his store. (*Id.* at 13). Tucker was responsible for handling scheduling and vacation requests for his employees; no one at 7-Eleven told him when to schedule his employee's vacations. (*Id.* at 7). Tucker decided the rate of pay each of his employees would earn and which employees received pay raises and how much for. (*Id.*) No one at 7-Eleven told Tucker how much to pay his employees. (*Id.*) Tucker was responsible for employee discipline at his store; 7-Eleven was not. (*Id.* at 14). Tucker determined the appropriate number of employees for each shift at his store; 7-Eleven did not. (*Id.* at 12). Tucker was responsible for the daily cash report for his store and for handling customer complaints at his store. (*Id.* at 11). Tucker hired Plaintiff, set her rate of pay, gave her one or more pay increases, set her schedule and made the decision to terminate Plaintiff's employment. (*Id.* at 9-11, 15).

## III.   LEGAL ARGUMENT

### A.   The Applicable Legal Standard.

"[T]he authorities are overwhelming that, though a defendant has submitted himself to state court jurisdiction on one cause of action, this does not prevent his removing the cause when an entirely new and different cause of action is filed." Cliett v. Scott, 233 F.2d 269, 271 (5th Cir. 1956). "The courts . . . have read into the [removal] statute an exception for the case where the plaintiff files an amended complaint that so changes the nature of his action as to constitute 'substantially a new suit begun that day.'" Wilson v. Intercollegiate (Big Ten) Conference Athletic Assoc., 668 F.2d 962, 965 (7th Cir. 1982) (quoting Fletcher v. Hamlet, 116 U.S. 408, 410 (1886)).

"Although 'an amendment of the complaint will not revive the period for removal if a state court case previously was removable but the defendant failed to exercise his right to do so,' a different result is generally reached if the pleading

<hr>

7

amendment provides (1) a 'new basis for removal' or (2) 'changes the character of the litigation so as to make it substantially a new suit.'" <u>Braud v. Transport Serv. Co. of Ill.</u>, 445 F.3d 801, 806 (5th Cir. 2006) (quotation omitted).  "This seems quite appropriate since a willingness on the part of the defendant to remain in a state court to litigate a particular claim should not be interpreted as a willingness on his part to remain in a state court to adjudicate a completely different claim." 14C Wright, Miller & Cooper, Federal Practice & Procedure § 3732 (3d Ed. 1998); <u>see</u> <u>also</u> <u>Garden Homes v. Mason</u>, 143 F.Supp. 144 (D.Mass. 1956) ("Willingness to remain in the state court for one cause of action does not show a willingness, or constitute a waiver, as to some quite different cause.").

"The revival exception provides that a lapsed right to remove an initially removable case within thirty days is restored when the complaint is amended so substantially as to alter the character of the action and constitute essentially a new lawsuit." <u>Johnson v. Heublein, Inc.</u>, 227 F.3d 236, 241 (5th Cir. 2000).  The holdings in this regard generally reflect "amendments of the pleadings which resulted in the advancement of different theories for recovery." <u>Davis v. Time Ins. Co.</u>, 698 F.Supp. 1317, 1322 (S.D.Miss. 1988); <u>see</u>, <u>e.g.</u>, <u>Craig Food Indus., Inc. v. Taco Time Intl., Inc.</u>, 469 F.Supp. 516 (D.Utah 1979); <u>Gerety v. Inland Newspaper Representatives</u>, 152 F.Supp. 31 (D.N.Y. 1957) (amended complaint asserted two new causes of action); <u>Bator v. Hungarian Commericial Bank</u>, 90 F.Supp. 609 (D.N.Y. 1950); <u>Baron v. Brown</u>, 83 F.Supp. 520 (D.N.Y. 1949).

"The right to revive must be determined in each case with reference to its purposes and those of the 30-day limitation on removal to which it is an exception, and against a background of general considerations relating to the proper allocation of decision-making responsibilities between state and federal courts." <u>Wilson</u>, 668 F.2d at 965.  These considerations are not implicated, however, where the amendments create a substantially new case:  "Amendments might fundamentally alter a complaint not because the plaintiff had been trying to mislead the defendant

but because new facts had come to light in the course of pretrial discovery. In such a case – where the amended complaint if effect begins a new case – using the 30-day limitation in section 1446(b) to bar removal would not serve the purposes of the limitation in any significant way." Id. at 966.

**B.    7-Eleven Has Established the Substantive Elements for Removal Jurisdiction.**

7-Eleven removed this case based on the provisions of the Class Action Fairness Act, 28 U.S.C. §§ 1332(d) & 1453 ("CAFA") and the general removal statute, 28 U.S.C. §§ 1441 & 1446. The CAFA applies to class action lawsuits where the aggregate number of all proposed plaintiff classes is 100 or more persons. 28 U.S.C. § 1332(d)(5). According to the First Amended Complaint, the potential class consists of 5,000 individuals. (*First Amd. Comp.* ¶ 11). Plaintiff also concedes that the First Amended Complaint satisfies the CAFA requirement that the aggregate amount in controversy exceed $5,000,000.[4] (*Pl. Memo.* at 1-2, 7-9). Indeed, Plaintiff admits that her meal and rest break claim within the First Amended Complaint alone satisfies the $5,000,000 amount in controversy requirement of the CAFA. (*Pl. Memo.* at 7).

There is also no dispute that the First Amended Complaint satisfies the CAFA requirement that any class member be a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2). 7-Eleven is a corporation incorporated in and under the laws of the State of Texas, and it is and has been at all material times a citizen of that state; 7-Eleven's corporate headquarters and principal place of business is in Dallas, Texas; 7 Eleven is not a citizen of the State of California.

---

[4]    Plaintiff states that the factual allegations in the original Complaint and the First Amended Complaint are identical, (*Pl. Memo.* at 9), and that the original Complaint was removable, (*id.* at 14). Because Plaintiff argues that the original Complaint was removable, *a fortiori*, Plaintiff concedes that the First Amended Complaint likewise contains sufficient factual allegations to support removal.

9

1   (*See First Amd. Compl.* ¶ 5; *Notice of Removal* ¶ 9(a)).  Plaintiff is a resident of the

2   State of California.  (*First Amd. Compl.* ¶ 4).

3         Thus, Plaintiff does not dispute in her motion to remand that 7-Eleven has

4   established each of the elements necessary for removal under the CAFA.  Indeed,

5   Plaintiff acknowledges that her pleadings satisfy the CAFA and are removable.

6   (*See, e.g., Pl. Memo.* at 2, 6, 7, 14).  Plaintiff's sole argument against removal is

7   that 7-Eleven's removal was untimely because it should have removed the case

8   based on the original Complaint.

9       **C.**    **7-Eleven's Removal of the First Amended Complaint Was Timely.**

10        Having conceded that the First Amended Complaint satisfies the

11  jurisdictional requirements for removal to this Court, Plaintiff argues that

12  7-Eleven's notice of removal was untimely.  Because Plaintiff's First Amended

13  Complaint so changed the nature of this action as to constitute a new lawsuit

14  against 7-Eleven, however, 7-Eleven's removal of this case within thirty days of

15  service of the First Amended Complaint was timely.

16      **1.**    **7-Eleven Removed Within Thirty Days of Service of**

17             **the First Amended Complaint.**

18        Plaintiff quibbles that 7-Eleven should have known that she had an *intent* to

19  file an amended complaint based on a series of correspondence sent to 7-Eleven's

20  counsel before she actually filed and served the First Amended Complaint, and

21  therefore 7-Eleven did not remove the First Amended Complaint within thirty days

22  of these letters.  Plaintiff does not cite the United States Supreme Court decision of

23  Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344 (1999), which

24  disposes of her argument.

25        In Murphy Brothers, the Supreme Court held that even a courtesy copy of a

26  filed complaint sent to the defendant did not trigger the thirty day period to

27  remove.  The time to remove is triggered by formal service of the complaint.  Id. at

28  356.  Here, the First Amended Complaint was first sent to 7-Eleven's counsel on

December 13, 2007, and was filed with the state court on December 18, 2007. Therefore, 7-Eleven's removal on January 10, 2008, was not only timely, but early.

### 2.  The First Amended Complaint Is a "New Lawsuit."

Plaintiff's First Amended Complaint so changed the nature of this action as to constitute a new lawsuit against 7-Eleven.  Because 7-Eleven timely filed its notice of removal after receipt of the First Amended Complaint, this Court should retain jurisdiction of this matter.

As noted above, "the authorities are overwhelming that, though a defendant has submitted himself to state court jurisdiction on one cause of action, this does not prevent his removing the cause when an entirely new and different cause of action is filed."  Cliett, 233 F.2d at 271.  The dispositive question on this motion is whether Plaintiff's First Amended Complaint "so changes the nature of [her] action as to constitute 'substantially a new suit.'"  Wilson, 668 F.2d at 965 (quoting Fletcher v. Hamlet, 116 U.S. 408, 410 (1886)); see also Braud, 445 F.3d at 806; Johnson, 227 F.3d at 241; Davis, 698 F.Supp. at 1322.

### a.  The First Amended Complaint Is a Substantially New Suit.

Plaintiff's First Amended Complaint is a substantially new lawsuit against 7-Eleven.  The First Amended Complaint contains new claims, new factual allegations, a new claim for punitive damages and a larger potential class of putative plaintiffs.  Therefore, the revival exception should apply here.

7-Eleven's potential liability on all causes of action in the original Complaint was conditioned on a finding that it was Plaintiff's employer along with its franchisee Tucker.  The First Cause of Action alleged violations of the Labor Code by Tucker for failure to provide meal or rest breaks, failure to pay overtime compensation, requiring employees to pay for uniforms, and noncompliant wage stubs. Each of the Labor Code sections cited in the First Cause of Action required a finding that the defendant was the plaintiff's employer in order for liability to

1    attach.  Cal. Labor Code §§ 226 ("Every *employer* shall . . . furnish each of his or

2    her *employees* . . ."); 226.7(a) ("No *employer* shall require any *employee* . . .");

3    226.7(b) ("If an *employer* fails to provide an *employee* . . ."); 512(a) ("An

4    *employer* may not employ an *employee* . . ."); 2802(a) ("An *employer* shall

5    indemnify his or her *employee* . . .") (emphasis added).  Plaintiff's Second Cause

6    of Action, under Business & Professions Code § 17200, was based upon the same

7    underlying violations of the California Labor Code as the First Cause of Action.

8    (*Compl.* ¶ 40).  Thus, all of the causes of action in the original Complaint depended

9    on a finding that in addition to being an employee of Tucker, Plaintiff was also an

10   employee of 7-Eleven.

11         This Court would ultimately make the determination whether 7-Eleven was

12   Plaintiff's employer by looking at whether 7-Eleven actually exercised control

13   over the daily activities at Tucker's store.  <u>Singh v. 7-Eleven, Inc.</u>, 2007 WL

14   715488, at *6-7 (N.D.Cal. 2007).  This is a fact-based determination under

15   California law.  <u>See</u> <u>id.</u>  The practical effect of this fact-based determination would

16   be to limit the scope of any potential class action to Tucker's two stores.  <u>See</u>, <u>e.g.</u>,

17   <u>Maddock v. KB Homes, Inc.</u>, 2007 WL 2221030 (C.D.Cal. 2007) (finding that

18   class action was not appropriate against parent corporation because individual

19   determinations would have to be made as to whether it was the employer of each

20   plaintiff in separate subsidiaries and the facts before the court suggested that it was

21   not, in fact, their employer).  Thus, the potential scope of the original Complaint

22   extended only to employees of two stores.

23         The First Amended Complaint completely changed the nature of the case as

24   against 7-Eleven.  The First, Second and Third Causes of Action are new claims

25   sounding in negligence.  The original Complaint did not contain any tort claims.

26   The three new negligence claims are only asserted against 7-Eleven, not against

27

28

                                            12

Tucker.[5]  The new negligence claims seek to impose *direct* liability on 7-Eleven for its activities in operating a payroll service for all of its 1,200 California franchisee stores rather than a contingent liability aimed only at Tucker's two stores.  These claims do not depend in any way on a finding that 7-Eleven was Plaintiff's employer.  Plaintiff's new "negligent payrolling" claims are also based on a new factual allegation that 7-Eleven used an improper method of rounding employee time.  Plaintiff also seeks to recover punitive damages on the negligence claims, while punitive damages were not recoverable based on the Labor Code and Section 17200 claims in the original Complaint.  See In re Wal-Mart Stores, Inc. Wage and Hour Litigation, 505 F.Supp.2d 609, 620-21 (N.D.Cal. 2007).

The potential class on Plaintiff's original Complaint was limited to the employees of Tucker's two stores (53 individuals in 2006).  The potential class on Plaintiff new negligent payroll claims could implicate all employees of 7-Eleven franchisees in California (19,346 individuals in 2006).  In sum, the three new negligence claims constitute a new lawsuit against 7-Eleven on a new subject matter, based on new factual allegations, implicating new potential damages liability, and implicating a larger potential class of putative plaintiffs.

The Johnson case is strikingly similar to the case at bar.  In Johnson, the original complaint stated claims on a promissory note and for conversion of a piece of equipment against the defendants.  Johnson, supra, 227 F.3d at 239.  Prior to a ruling on the merits, two of the defendants confessed to a judgment and assigned to the plaintiffs any claims they had against the remaining defendants.  Id.  The plaintiffs then filed an amended complaint in which they asserted for the first time claims for breach of contract, bad faith, unjust enrichment and fraud against the

---

[5]     This point highlights how different the new negligence claims are because they do not even implicate the liability of the franchisee defendant, Tucker.

1  remaining defendants.  Id.  The remaining defendants removed the case at that time

2  and the plaintiffs filed a motion to remand claiming untimely removal.  Id.

3       The district court denied the motion to remand.  The Fifth Circuit affirmed,

4  finding that the amended complaint met the criteria for the revival exception.  Id. at

5  241-42.  The court found that "the allegations in the [amended complaint] bear no

6  resemblance whatsoever to the allegations of the [original complaint]."  Id. at 242.

7  Specifically, the court noted that "[a]fter the complaint was amended, the Co-

8  defendants were confronted with a suit on a construction contract involving

9  exposure to substantial compensatory and punitive damages, instead of only a

10 questionable conversion claim by a competing creditor with an apparently inferior

11 lien."  Id.  Thus, "the amended complaint state[d] a virtually new, more complex

12 and substantial case against the Co-defendants upon which no significant

13 proceedings have been held."  Id.  Under such circumstances, the Fifth Circuit

14 upheld the application of the revival exception and the removal.

15      As in Johnson, the new claims in the First Amended Complaint contain

16 allegations that bear no resemblance to the original Complaint.  The original

17 Complaint alleged straightforward violations of the California Labor Code – i.e.

18 failure to pay overtime, failure to provide meal and rest breaks – aimed at a few

19 stores of one 7-Eleven franchisee.  On the other hand, the First Amended

20 Complaint contains three new negligence claims based on new allegations of

21 alleged misconduct by 7-Eleven across the State of California.  For example,

22 Plaintiff now alleges that 7-Eleven used an "illegal rounding system of employee

23 work time calculation" for its franchise payroll.  (*First Amd. Compl.* ¶ 25).  This

24 allegation, which is part of the basis for the new negligence claims, does not

25 appear in the original Complaint.  The claims in the original Complaint required a

26 finding that 7-Eleven was Plaintiff's employer; the new negligence claims do not.

27 Indeed, the three new negligence claims simply bear no resemblance to the claims

28 asserted in the original Complaint.

14

1    Like <u>Johnson</u>, 7-Eleven was originally facing a highly questionable lawsuit
2  that did not even appear to be warranted by existing law or by a nonfrivolous
3  argument for extending, modifying or reversing existing law.  <u>See</u> Fed. R. Civ.
4  Pro. 11; Cal Code Civ. Proc. § 128.7.  The California courts have repeatedly
5  upheld the independent contractor relationship between 7-Eleven and its
6  franchisees, holding that 7-Eleven is not the employer of its franchisee's
7  employees nor is it an agent of the franchisee.  <u>Singh v. 7-Eleven, Inc.</u>, 2007 WL
8  715488 (N.D.Cal. 2007); <u>Cislaw v. Southland Corp.</u>, 4 Cal.App.4th 1284 (1992);
9  <u>Wickham v. Southland Corp.</u>, 168 Cal.App.3d 49 (1985); <u>see</u> <u>also</u> <u>Chelkova v.</u>
10 <u>Southland Corp.</u>, 771 N.E.2d 1100 (Ill. App. 2002); <u>Daves v. Southland Corp.</u>,
11 2000 WL 60199 (Wash. App. 2000); <u>Hatcher v. Augustus</u>, 956 F.Supp. 387
12 (E.D.N.Y. 1997).  Indeed, there is a paucity of reported decisions nationwide
13 holding franchisors liable for the wage and hour violations of its franchisee.  <u>See</u>,
14 <u>e.g.</u>, <u>Howell v. Chick-Fil-A, Inc.</u>, 1993 WL 603296, *2 n.2 (N.D.Fla. 1993) (noting
15 in FLSA case brought by employee of franchisee against franchisor that that court
16 has "not discovered a reported case in which a franchisor has been held liable to an
17 employee of an independent contractor.").

18    As in <u>Johnson</u>, the First Amended Complaint presented 7-Eleven with new
19 legal theories that posed a significantly different exposure to damages.  The new
20 negligence claims in the First Amended Complaint seek to impose direct liability
21 on 7-Eleven across its franchise system in California and do not require a finding
22 that 7-Eleven also employed Plaintiff along with Tucker.  The potential liability on
23 the new claims is significantly larger than on the claims in the original Complaint.
24 Further, Plaintiff is seeking punitive damages on her negligence claims – damages
25 that were not previously available on her statutory Labor Code claims.  Likewise,
26 Plaintiff is seeking collective relief under the California Private Attorneys General
27 Act not previously sought in the original Complaint.  Moreover, the potential
28 damages pleaded in the original Complaint were less than $75,000 and limited to

15

Tucker's stores based on a finding that 7-Eleven was Plaintiff's "employer."  As the authorities above demonstrate (which Plaintiff was required to follow before filing her original Complaint in order that it not be frivolous), there can be no legal basis to extrapolate any finding of employer status regarding Tucker to 1,200 stores owned and operated by different franchisees.  Thus, the scope of potential liability on the original Complaint was quite narrow.

As in <u>Johnson</u>, this Court should find that the First Amended Complaint is a "virtually new, more complex and substantial case" against 7-Eleven and retain jurisdiction over this case.

### b.    Policy Considerations Favor Removal.

Important policy considerations also favor the exercise of removal jurisdiction in this case.  First, 7-Eleven's willingness to remain in state court to litigate the original claims in this case should not be viewed as a blanket willingness to litigate new claims in state court to conclusion.  Second, Plaintiff is not procedurally prejudiced by removal to federal court because she made the choice to plead substantially different claims against 7-Eleven.

It is not unreasonable for a defendant who is willing to remain in state court given the original nature of a case to conclude that it is unwilling to remain in state court to adjudicate a completely different claim.  14C Wright, Miller & Cooper, Federal Practice & Procedure § 3732 (3d Ed. 1998) ("a willingness on the part of the defendant to remain in a state court to litigate a particular claim should not be interpreted as a willingness on his part to remain in a state court to adjudicate a completely different claim"); <u>see</u> <u>also</u> <u>Garden Homes v. Mason</u>, 143 F.Supp. 144 (D.Mass. 1956) ("Willingness to remain in the state court for one cause of action does not show a willingness, or constitute a waiver, as to some quite different cause.").  Such is the case here.  As noted above, the new negligence claims dramatically change the nature and potential scope of this case.  7-Eleven certainly

1  could choose to litigate a case involving two stores in state court while deciding

2  that litigating a case involving 1,200 stores should be in federal court.

3  In addition, the policy considerations behind the 30-day limitation on

4  removal are not implicated here. <u>Wilson</u>, 668 F.2d at 965-66 ("where the amended

5  complaint if effect begins a new case – using the 30-day limitation in section

6  1446(b) to bar removal would not serve the purposes of the limitation in any

7  significant way"). It was *Plaintiff's* decision to delay the assertion of substantial

8  claims against 7-Eleven until the First Amended Complaint. Indeed, it is apparent

9  that Plaintiff brought the First Amended Complaint because she recognized that

10  her theory of liability against 7-Eleven in the original Complaint did not hold

11  water.

12  Although the parties have exchanged written discovery, no depositions have

13  been taken in this case. Because no significant proceedings have been held in the

14  state court, "the removal will not result in delay, waste or undue tactical advantage

15  to a party." <u>Johnson</u>, 227 F.3d at 242. Given these facts, 7-Eleven's removal of

16  the case to federal court should not be viewed as a procedural mechanism to

17  prejudice Plaintiff by "seeing how the case goes in state court and removing." <u>Id.</u>

18  **D.     Plaintiff Is Not Entitled To Attorneys' Fees and Costs.**

19  Plaintiff requests an award of attorneys' fees and costs in her motion.

20  Sanctions are not appropriate, however, where a defendant had an "objectively

21  reasonable ground" for the removal. <u>See</u> <u>Martin v. Franklin Capital Corp.</u>, 546

22  U.S. 132, 141 (2005). 7-Eleven submits that, based on the foregoing arguments, it

23  had an objectively reasonable ground for the removal of this action. Significantly,

24  Plaintiff herself concedes that the First Amended Complaint is removable on its

25  face. Plaintiff's sole objection to removal is that it was untimely. Plaintiff has not

26

27

28

MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO
REMAND TO STATE COURT                                    08 CV 0059 J  (WMc)

1  presented sufficient grounds for remand or for an award of attorneys' fees and

2  costs in this case.[6]

3  **IV.    CONCLUSION**

4          For the foregoing reasons, 7-Eleven respectfully requests that the Court deny

5  Plaintiff's motion to remand and retain jurisdiction over this action.

6

7  DATED:  February 15, 2008                WELTER LAW FIRM, P.C.

8

9                                           By: /s/ Eric A. Welter

10                                                    ERIC A. WELTER

11                                           Attorneys for Defendant

12                                           7-ELEVEN, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  [6]    Plaintiff's counsel also represented in his correspondence regarding removal

28  that they did not intend to ask for attorneys' fees and costs.  (*Miceli Decl.* Ex. O).

18

PROOF OF SERVICE

(Aleksick v. 7-Eleven, Inc., et al.)

STATE OF VIRGINIA, COUNTY OF FAIRFAX

I am employed in the County of Fairfax, Commonwealth of Virginia.  I am over the age of 18 and not a party to the within action.  My business address is 720 Lynn Street, Suite B, Herndon, Virginia 20170.

On February 15, 2008, I served the following documents described as MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANT 7-ELEVEN, INC. IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND TO STATE COURT; DECLARATION OF ERIC A. WELTER; DECLARATION OF LARRY BORDERS on all interested parties in this action as follows:

☑      (ECF) by filing the above with the Court's ECF system which accomplishes electronic service on all registered ECF users listed below and by any parties not registered for electronic service as indicated below.

☐      (BY FAX) by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date.  The facsimile machine I used complied with California Rules of Court, Rule 2003(3) and the transmission was reported as complete and without error by the machine.  Pursuant to California Rules of Court, Rule 2008(e)(4), I caused the machine to print a transmission record of the transmission, a copy of which is attached to this declaration.

☑      (BY MAIL) by causing a true and correct copy of the above to be placed in the United States Mail at Herndon, Virginia, in sealed envelope(s) with postage prepaid, addressed as set forth below.  I am readily familiar with this law firm's practice for collection and processing of correspondence for mailing with the United States Postal Service.  Correspondence is deposited with the United States Postal Service the same day it is left for collection and processing in the ordinary course of business.

1
2
3

☐    (EXPRESS MAIL/OVERNIGHT DELIVERY) by causing a true and correct copy of the document(s) listed above to be delivered by _____ in sealed envelope(s) with all fees prepaid at the address(es) set forth below.

4
5
6
7

☐    (PERSONAL SERVICE) by causing a true and correct copy of the above documents to be hand delivered in sealed envelope(s) with all fees fully paid to the person(s) at the address(es) set forth below.

8
9
10
11
12

Alison M. Miceli, Esq. (via ECF)
SULLIVAN & CHRISTIANI, LLP
2330 Third Avenue
San Diego, CA 92101
Tel. 619-702-6760  Fax 619-702-6761
Counsel for Plaintiff

13
14
15
16
17

William B. Sullivan, Esq. (via U.S. Mail)
SULLIVAN & CHRISTIANI, LLP
2330 Third Avenue
San Diego, CA 92101
Tel. 619-702-6760  Fax 619-702-6761
Counsel for Plaintiff

18
19
20
21
22
23

Eric C. Sohlgren, Esq. (via ECF)
Lindley Fraley, Esq.
PAYNE & FEARS LLP
4 Park Plaza, Suite 1100
Irvine, CA 92614
Tel. 949-851-1100  Fax 949-851-1212
Co-Counsel for Defendant

24
25
26
27
28

Paul C. Johnson, Esq. (via ECF)
BACALSKI, OTTOSON & Dubé LLP
402 West Broadway, 24th Floor
P.O. Box 120270
San Diego, CA 92112-0270
Tel. 619-239-4340  Fax 619-239-0116
Counsel for Defendant Michael Tucker

1

2   Executed on February 15, 2008, at Herndon, Virginia.

3

4                                          /s/ Eric A. Welter

5                                          ERIC A. WELTER

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28